# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA ANN COVINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-275-JHP-KEW |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Patricia Ann Covington (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on August 7, 1983 and was 30 years old at the time of the ALJ's decision. Claimant completed her high school education and some college. Claimant has worked in the past as a deli worker. Claimant alleges an inability to work beginning January 1, 2011 due to limitations resulting from anxiety, depression, and knee problems.

## Procedural History

On September 21, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On September 27, 2011, Clamiant filed an application for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*). Claimant's applications were denied initially and upon reconsideration. On October 17, 2013, Administrative Law Judge James Bentley ("ALJ") conducted a hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On December 18, 2013, the ALJ issued an unfavorable decision. On May 27, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to determine Claimant met a listing; (2) failing to accord appropriate weight to the opinions of Claimant's treating physicians; and (3)

finding Claimant retained the RFC to perform a full range of sedentary work apply the Grids.

**Evaluation for a Listing**

In his decision, the ALJ determined Claimant suffered from the severe impairments of panic disorder, post traumatic stress disorder ("PTSD"), depression, anxiety, obesity, and knee pain. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform a fully range of sedentary work. Due to moderate limitations in social functioning and concentration, Claimant was limited to simple, repetitive tasks in a familiar setting with routine supervision, occasional contact with co-workers and supervisors and no work-related contact with the general public. Due to obesity and knee pain, Claimant required a "sit to stand" option, defined as a temporary change in position from sitting to standing and back with no more than one change in positoin every half hour and without leaving the work station. The ALJ restricted Claimant to never climbing ladders, ropes, or scaffolds and no kneeling, crouching, or crawling. (Tr. 16).

After consulting with a vocational expert, the ALJ concluded Claimant could perform the representative jobs of addresser and optical goods assembler, both of which were found to exist in sufficient numbers in both the regional and national economies.

(Tr. 22). As a result, the ALJ found Claimant was not disabled from January 1, 2011 through the date of the decision. Id.

Claimant contends the ALJ erred in failing to find her impairments met or equaled a listing at step three of the sequential evaluation. Specifically, Claimant contends she met the requirements for Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) but that the ALJ failed to consider the totality of the evidence supporting the finding, including the reports of Claimant's treating physician.

The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. <u>Andrade v. Sec. of Health & Human Services</u>, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or

6

(4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04.  The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments.  Claimant suggests that the report by his treating physician, Dr. Rick Robbins, would support the required marked limitations contained in the Part B criteria.

On September 10, 2012, Dr. Robbins authored a mental medical source statement on Claimant. (Tr. 452-54).  He found Claimant's mental limitations were "extreme" in the functional areas of interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. He also determined her limitations were "marked" in the areas of understanding and remembering simple instructions, carrying out simple instructions, the ability to make judgments on simple work-related decisions, responding appropriately to usual work situations and to changes in a routine work setting, and the ability to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 454).

7

Claimant asserts in the briefing the ALJ did not consider Dr. Robbins' opinion. In fact, the ALJ briefly recognized the opinion and its findings but he assigned "little weight" to it, finding the opinion was inconsistent with Dr. Robbins' treatment notes and the opinions of other medical sources. (Tr. 19).

Dr. Robbins' opinion finds some support in the record. Dr. Karen Kendall found Claimant to be markedly limited in the areas of the ability to carry out detailed instructions and ability to interact appropriately with the general public. (Tr. 425-26). While the ALJ gave this opinion "some weight", he rejected the findings of restriction in individual functional categories. (Tr. 20).

The problem lies with the fact that Dr. Robbins was largely responsible for treating Claimant's physical conditions while recognizing her mental problems but not necessarily rendering treatment for them. In essence, his restrictive mental assessment stands without medical support in his treatment records. Thus, while Dr. Robbins is a treating source, he is a treating source for Claimant's physical problems. (Tr. 445-450).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d

8

1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons"

for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ's evaluation of Dr. Robbins' mental assessment is disturbingly brief, this Court cannot find error in his ultimate conclusion. Giving the opinion little to no weight was supported by the greater weight of the remaining medical opinion evidence and by the lack of reference for treatment of Claimant's mental problems in his treatment notes. As a result, the ALJ evaluation of the listings was supported by substantial evidence.

**Evaluation of the Opinion Evidence**

Claimant contends the ALJ failed to adequately consider the opinions of her treating physicians, Dr. M. Stephen Wilson, Dr. Antoine Jabbour, and Dr. Robbins. Dr. Robbins authored a medical source statement dated September 10, 2012 on Claimant's physical restrictions. He determined Claimant could occasionally and

frequently lift/carry less than ten pounds, stand/walk for less than two hours in an eight hour workday, sit for less than two hours in an eight hour workday, and must periodically alternate between sitting and standing to relieve pain and discomfort. (Tr. 447). Claimant was limited in the use of her lower extremities. Dr. Robbins stated narratively that Claimant was "unable to bend and put weight on left knee creating [increased] pain." (Tr. 448). Dr. Robbins further found Claimant could never climb, balance, stoop, kneel, crouch, or crawl. She was limited in reaching in all directions, handling, fingering, feeling, and crouching. Id. Dr. Robbins found Claimant should avoid even moderate exposure to extreme cold, extreme heat, noise, and vibration. All exposure to hazards should be avoided. Wetness and humidity should be avoided when exposure was concentrated. (Tr. 449).

The ALJ found that although Dr. Robbins was a treating source with a long history of treatment, "his own clinical examinations do not support the extreme functional limitations upon which he opined." (Tr. 18). This analysis is lacking. This type of amorphous reference to the medical record lacks the required specificity to completely reject a treating source's opinion. Moreover, the ALJ is obligated to state the weight he does provide to a treating source's opinion, even if he justifiably rejects

11

applying controlling weight. Here, the ALJ neither bolsters his apparent rejection of controlling weight nor provides an explanation of the weight he does apply to Dr. Robbins' opinion. On remand, the ALJ shall rectify these deficiencies.

Dr. Jabbour provided treatment for Claimant's knee condition. He provided a note for worker's compensation purposes that indicated Claimant was permanently restricted in her left knee with no prolonged standing or walking, no kneeling, squatting, or climbing, and a restriction to a "sit down job only." (Tr. 317). His examination on October 3, 2011 indicated Claimant was overweight with full range of motion of her left knee with no knee effusion. He was unable to reproduce the locking or catching sensation Claimant had reported. Claimant had no ligamentous instability and negative McMurray's. He believed she suffered from pain but Dr. Jabbour could not explain the numbness and tingling down her legs or the severity of the pain she reported. He feared that the condition was worsening her anxiety. He did not recommend surgery and that she needed to learn to live with the condition. Claimant admitted she could do a sit down job but nothing more. This precipitated a permanent restriction to a sit down job. He recommended a pain management doctor if her pain continued. (Tr. 315-16).

The ALJ assigned "some weight" based upon the fact the standards are different for worker's compensation than Social Security. (Tr. 18). Again, the ALJ is habitually avoiding the controlling weight analysis for treating physicians and simply assigning a reduced weight without consideration to the physician's status. Moreover, the fact the standards differ between the two types of disability proceedings does not alter the circumstance of the physical and vocational restrictions placed upon Claimant by Dr. Jabbour. In this instance, this Court is uncertain how giving controlling weight to Dr. Jabbour's recommendations would have altered the ultimate outcome of this case. Under either controlling or a reduced weight, the ALJ must account for the sit down restriction in his RFC or explain why he rejects this limitation by a treating source.

Dr. Wilson also treated Claimant's left knee/leg condition resulting from a work accident. In October of 2011, Dr. Wilson found the knee to be tender to palpation, normal range of motion, weakness against resistance, patellofemoral crepitation, antalgic gait pattern of the left lower extremity with decreased stance time, stride length, and toe-off. McMurray's sign was negative. Compression test was positive. He recommended pain management and vocational training in accordance with Dr. Jabbour's restrictions.

13

He determined Claimant could not perform her prior work but could return to a sedentary work. (Tr. 381-84).

Dr. Wilson's opinion essentially piggybacks off of the restrictions found by Dr. Jabbour. The ALJ recognized Dr. Wilson's findings, qualified his adoption since Dr. Wilson was a worker's compensation physician, but gave the opinion "some weight" in agreeing Claimant could return to sedentary work. (Tr. 18). Again, the fact Dr. Wilson was retained for worker's compensation purposes does not reduce his role as a treating physician. His opinion was entitled to be weighed as such - whether increased or controlling weight actually aids in Claimant's cause toward disability or not. On remand, the ALJ shall provide the required weight analysis.

### RFC Determination

Since the opinion evidence must be re-evaluated, the ALJ shall reconsider his RFC findings after re-weighing the opinions of Claimant's treating physicians.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social

Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE